IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



JOHN GASSAWAY,

    Petitioner,

v.                                                    Civil Action No. **3:08CV415**

UNITED STATES PAROLE COMMISSION,

    Respondent.

## MEMORANDUM OPINION

Petitioner, a District of Columbia ("D.C.") offender imprisoned in the Federal Correctional Center at Petersburg, brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges the United States Parole Commission's ("the Commission") decision to deny him parole. Petitioner contends that he is entitled to relief upon the following grounds:[1]

| | |
|---|---|
| Claim One | The Commission violated Petitioner's rights under the Ex Post Facto Clause[2] because it should have utilized the D.C. parole guidelines in effect at the time he committed his offenses to review his suitability for release on parole. Instead, the Commission used new, stricter parole guidelines to deny Petitioner parole; and, |
| Claim Two | When the Commission applied the new parole guidelines set forth at 28 C.F.R. § 2.80, Petitioner's rights were violated because he did not receive |

---

[1] In his Memorandum in Support of his habeas petition, Petitioner set forth a list of "Certified Questions" wherein he poses a series of legal questions. (Mem. in Supp. of § 2241 Pet. at 3.) Petitioner fails to explain why a particular answer to any of the legal questions would entitle him to relief. Accordingly, the Court will treat these questions merely as a rhetorical device, rather than as bases for habeas relief. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Where the context . . . makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern.").

[2] "No Bill of Attainder or *ex post facto* Law shall be passed." U.S. Const. art. 1, § 9, cl. 3.

>   proper credit for his superior program achievement under these guidelines.

(§ 2241 Pet. 3, 4.) The United States has responded and moved to dismiss. Petitioner has filed a reply to that motion. Additionally, by Memorandum Order entered on August 7, 2009, the Court requested further briefing from the Commission. The Commission also has responded to that order and Petitioner has also filed a reply.

## I. PROCEDURAL HISTORY

On June 28, 1994, Petitioner was involved in an altercation with two other individuals, who shot at Petitioner. Petitioner fled the scene, but returned with a gun. Petitioner fired a shot and killed an innocent bystander. On August 23, 1995, the Superior Court of the District of Columbia convicted Petitioner of committing assault with intent to kill while armed, armed manslaughter, carrying a pistol without a license, and possession of a firearm during the commission of a crime of violence. The Superior Court sentenced Petitioner to 13 to 39 years in prison. (Respt.'s Mot. to Dismiss Ex. A.)

On August 5, 1998, the Commission assumed the D.C. Board of Parole's authority, was given exclusive jurisdiction over parole decisions for all D.C. felony offenders, and was given exclusive authority to amend or supplement any regulation interpreting or implementing D.C.'s parole laws concerning felons. *See* D.C. Code § 24-131(a)(1). Based on its newfound authority under D.C. Code § 24-131, the Commission amended D.C.'s parole guidelines. These new parole guidelines are now set forth at 28 C.F.R. § 2.80 (hereinafter "the New Parole Guidelines").

On April 18, 2007, a Commission hearing examiner conducted Petitioner's parole hearing pursuant to the New Parole Guidelines. Under the New Parole Guidelines, the Commission calculates when an inmate is presumptively suitable for release on parole. *See* 28 C.F.R. § 2.80(l). The end result of this calculation is a range of months called the Total Guideline Range. An inmate is presumptively suitable for release on parole after serving the months specified in the Total Guideline Range.[3]

The first step to determining the Total Guideline Range is to ascertain the minimum number of months the prisoner must serve before he becomes eligible for parole. *Id.* For D.C. Code offenders, the minimum term to be eligible for parole generally is one-third of the maximum sentence imposed by the court less any good-time credits. In Petitioner's case, he was eligible for parole after 156 months.

The second step in determining a prisoner's Total Guideline Range is to calculate a prisoner's Base Point Score.[4] The Base Point Score attempts to account for factors such as risk of recidivism and the inmate's potential for violence. *See id.* § 2.80(f)-(h). Petitioner's Base Point Score was 7, which resulted in a Base Point Guideline Range of 72 to 96 months. This Base Point Guideline Range was added to Petitioner's 156 month minimum term, resulting in a guideline range of 228 to 252 months. *See* 28 C.F.R. § 2.80(l).

---

[3] The Commission retains discretion to depart from the Total Guideline Range when deciding whether to grant or deny parole, provided that it explains the rationale for its decision. *See* 28 C.F.R. § 2.80(n)(1).

[4] The Base Point Score corresponds to a range of months that are added to the minimum number of months the prisoner must serve before he becomes eligible for parole.

3

At the third step, the Commission adds months to the guideline range for negative institutional behavior and subtracts months from the guideline range for superior program achievement ("SPA").[5] *See* 28 C.F.R. § 2.80(j)-(l). The initial hearing examiner noted:

> **Program Achievement:** The subject receives above average work reports for his job in Food Service. The subject's case manager stated that it was very difficult to get a job at USP Terre Haute and he commended the subject for doing so and doing well. I will be recommending the subject for a 4 month SPA based upon this. The subject has also completed the Seven Habits of Highly Affective [sic] People, and his discussion of that program, it appeared that he got quite a bit out of it in terms of learning the value of respecting others to make it easier for himself to get along not only in prison but in the community. He has also taken Business for Beginners, Creative Writing, Safety, OSHA and Parenting.
>
> **Superior Program Achievement Award Recommendation:** This recommendation includes a 4 month credit for Superior Program Achievement; specifically, for receiving positive work evaluations and completion of educational programs.

(Respt.'s Mot. to Dismiss Ex. B at 2.) A second hearing examiner, an executive hearing examiner, reviewed Petitioner's case before it was submitted to the Commission. The executive hearing examiner assumed that the 4-month SPA reduction was based on 1 year of SPA completed in 2006. (Respt.'s Mot. to Dismiss Ex. B at 4.) Ultimately, the executive hearing examiner concluded that Petitioner's Total Guideline Range was 224 to 250 months, recommended that Petitioner be denied parole, but recommended that a reconsideration hearing should be held in 60 months.

---

[5] In Claim Two, Petitioner only challenges alleged errors in calculating his award for superior program achievement. Petitioner does not challenge the Commission's 0-2 month increase to his guideline range for a disciplinary infraction. (Respt.'s Mot. to Dismiss Ex. D at 3.)

4

Petitioner challenged the conclusion that he was only entitled to 4 months credit with respect to SPA.[6] (Mem. in Supp. of § 2241 Pet. Ex. C.) Petitioner noted that both hearing examiners had overlooked numerous programs and classes that he had completed in assessing his award of SPA credit. In light of those achievements, Petitioner asserted that he was entitled to a greater SPA award.[7]

The Commission agreed with the executive hearing examiner. On May 22, 2007, the Commission denied Petitioner parole and continued him to a reconsideration hearing in 60 months.

## II. DENIAL OF ADEQUATE CREDIT FOR SUPERIOR PROGRAM ACHIEVEMENT

Because Claim Two is closely tied to the immediately proceeding procedural discussion, it is appropriate to address that claim first. In Claim Two, Petitioner asserts:

---

[6] It appears that Petitioner sent the letter, which he attached as Exhibit C to his petition, after the executive hearing examiner made his decision, but before the Commission rendered its final decision on May 22, 2007. The letter, however, is not mentioned in the Commission's decision or in any of the papers submitted by the Commission.

[7] The pertinent regulation provides:
    Guidelines for superior program achievement. If superior program achievement is found, the award for superior program achievement shall be one-third of the number of months during which the prisoner demonstrated superior program achievement. The award is determined on the basis of all time in confinement on the current offense in the case of an initial hearing, and on the basis of time in confinement since the last hearing in the case of a rehearing. If superior program achievement is not found, this step is not applicable.
    Note: When superior program achievement is found, it is presumed that the award will be based on the total number of months since the beginning of confinement on the current offense in the case of an initial hearing, or since the last hearing in the case of a rehearing. Where, however, the Commission determines that the prisoner did not have superior program achievement during the entire period, it may base its decision solely on the number of months during which the prisoner had superior program achievement.
28 C.F.R. § 2.80(k).

5

> If this court find that the U.S. Parole Comm. did see Petitioner under proper guidelines, then Petitioner was treated different in reference to superior program guidelines ---- he was only given credit for programing while in the custody of the FBOP . . . . This is also a liberty interest because time off for superior programing would also change Petitioner's parole eligibility date.

(§ 2241 Pet. 4 (capitalization corrected).) Liberally construed, Petitioner essentially contends that his rights were violated when the Commission applied the New Parole Guidelines set forth at 28 C.F.R. § 2.80 because the Commission did not follow its own regulations in awarding him credit for his superior program achievement. *See Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir. 1981) (citing cases); *Kirk v. White*, 627 F. Supp. 423, 425-28 (E.D. Va. 1986). More specifically, Petitioner asserts that the Parole Commission ignored much of the programing he completed in evaluating him for a SPA award. (Mem. in Supp. of § 2241 Pet. Ex. C.) There appears to be some factual merit to this assertion. Petitioner notes a number of classes and programs he completed, including a GED and an apprenticeship in Commercial Clearing, which required 2000 hours of schooling, which are not mentioned by the hearing examiner in her summary of Petitioner's programs. (Mem. in Supp. of § 2241 Pet. Ex. C; Respt.'s Mot. to Dismiss Ex. B at 2.) Indeed, in its recent submission, the Commission is at a loss as to why Petitioner's GED was not discussed in evaluating his suitability for parole: "Petitioner apparently advised the Commission of his GED after the hearing, but it is unclear from the record why this information was not provided to the Commission at his hearing, or why it was not reviewed as a request to reopen the Commission's decision." (Respt.'s Reply to Petr.'s Resp. to Respt.'s Supp'l Br. 1 (Docket No. 17).).

The Commission did not specifically address Claim Two in its motion to dismiss. In its subsequent filings, the Commission interpreted Petitioner to claim that he was demanding credit

6

for SPA with respect to his calculation for parole suitability under the D.C. Parole Board parole regulations in effect at the time he committed his offenses. Because the Commission's submissions do not adequately address the claim before the Court, the motion to dismiss Claim 2 will be DENIED. The Commission will be DIRECTED to address Claim Two, as framed above, within thirty (30) days of the date of entry hereof.

### III. *EX POST FACTO* CHALLENGE

In Claim One, Petitioner contends that the Commission violated his rights under the *Ex Post Facto* Clause by applying the New Parole Guidelines set forth in 28 C.F.R. § 2.80, rather than the D.C. Parole Board parole regulations in effect at the time he committed his offenses.[8] If Petitioner prevailed on his *ex post facto* claim, he would not be entitled to immediate release. *See Taylor v. Craig*, No. 5:05cv00781, 2009 WL 900048, at *13 (S.D. W. Va. Mar. 24, 2009). Rather, "[a]t best, he would be entitled to a new parole hearing with instructions to the [Commission] to exercise its discretion within the framework" of the D.C. Parole Board parole regulations in effect at the time he committed his offenses. *Id.* (*citing Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)); *see also Sellmon v. Reilly*, 551 F. Supp. 2d 66, 99-100 (D.D.C. 2008). The Commission has agreed to provide Petitioner with this relief by virtue of 28 C.F.R. § 2.80(o)(1). That regulation, which became effective as of August 19, 2009, allows D.C. offenders, such as Petitioner to "receive a parole determination using the 1987 guidelines of the former District of

---

[8] The Court notes that there is some question as to whether the discretionary parole guidelines that are at issue in this case can support an *ex post facto* challenge. *Compare Lyons v. U.S. Parole Comm'n*, 3:08cv00342, 2009 WL 211583, at *4 (E.D. Va. Jan. 28, 2009) (Payne, J.) (concluding D.C. parole guidelines lack the force of law and thus are not subject to *ex post facto* analysis), *with United States v. Lewis*, 603 F. Supp. 2d 874, 876 (E.D. Va. 2009) (Hudson, J.) (concluding advisory sentencing guidelines are subject to *ex post facto* challenge).

7

Columbia Board of Parole." 28 C.F.R. § 2.80(o)(1). Respondent represents that the Commission will conduct a new parole hearing for Petitioner on November 30, 2009. The provision of that hearing moots Petitioner's *ex post facto* claim. *See Wilson v. Reilly*, 163 F. App'x 122, 125 (3d Cir. 2006) (No. 05-3390), *available at* 2006 WL 73156, at *3; *see also Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." (*quoting Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983))); *see also Sellmon*, 551 F. Supp. 2d at 100 (directing Parole Commission to conduct a new hearing within forty-five days); *Smith v. Reilly*, 604 F. Supp. 2d 124, 132 (D.D.C. 2009) (granting relief on inmate's *ex post facto* challenge to application of new guidelines on March 31, 2009); *id.* No. 07-1934 (D.D.C. Aug. 28, 2009) (Order denying inmate's motion for expedited parole hearing where his new parole hearing was scheduled to occur within six months of initial decision granting relief). Accordingly, Claim One will be PROVISIONALLY DISMISSED AS MOOT. A final order dismissing Claim One will be entered after the Commission reviews Petitioner for parole pursuant to 28 U.S.C. 2.80(o)(1).

The motion to dismiss (Docket No. 5) will be GRANTED IN PART AND DENIED IN PART.

An appropriate Order shall issue.

Dated: 9-22-09
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge